**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No.: 23-cv-20561-SEITZ/Reid**

Dennis Mark Mickeleit and
Beta Gama Foundation,

      Plaintiffs,

v.

Vallarino Fry Law, P.A. d/b/a Bufete
Vallarino y Asociados and Nicholas M.
Apostol,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR ENTRY OF**
**FINAL DEFAULT JUDGMENT**

      Plaintiffs, Dennis Mark Mickeleit ("Mickeleit") and Beta Gama Foundation ("BGF," with Mickeleit, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and this Court's *Order Requiring Motion for Default Judgment* [ECF No. 14], respectfully request entry of a final default judgment against Defendants Vallarino Fry Law, P.A. d/b/a Bufete Vallarino y Asociados ("VFL") and Nicholas M. Apostol ("Apostol," with VFL, "Defendants"), and in support state:

## I.     <u>INTRODUCTION</u>

      As alleged in the Complaint, this action involves, among other things, breach of contract, breach of fiduciary duty, fraud, conversion, unjust enrichment, and violation of Florida's Deceptive and Unfair Trade Practices Act relating to Defendants' tortious and illegal actions in obtaining Plaintiffs' monies resulting in losses to Plaintiffs in excess of $4,000,000.00, and breach of a settlement agreement. Defendants failed to respond or otherwise defend in this action. As such, a Clerk's Default was entered against each Defendant. Given Defendants' continued failure

92433609.1

to participate in the instant lawsuit, Plaintiffs are seeking from the Court a Default Final Judgment against Defendants under Fed. R. Civ. P. Rule 55(b).

## II.    PROCEDURAL HISTORY

1.      On February 11, 2023, Plaintiffs filed an eight-count complaint (the "Complaint") [ECF No. 1] against Defendants—VFL and Apostol.

2.      Service of process was perfected on Defendants on February 20, 2023. *See* ECF Nos. 10,11.

3.      Pursuant to Fed. R. Civ. P. 12, defendants must file an answer or otherwise respond within 21 days of being served with a complaint. A failure to do so may result in the Clerk's entry of a default under Fed. R. Civ. P. 55(a), which states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

4.      According to Fed. R. Civ. P. 12(a)(1), Defendants were required to respond to the Complaint on or before March 13, 2023.

5.      Defendants failed to respond to the Complaint by March 13, 2023, and on March 14, 2023, a Clerk's Default [ECF No. 13] was entered as to each Defendant.

6.      To date, a review of the docket indicates that Defendants have not sought to vacate the Clerk's Default and have not otherwise filed or served any response to the Complaint.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (i) complete diversity of citizenship exists between Plaintiff and Defendants; and (ii) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. §1391(b).

92433609.1

8.      Plaintiff Mickeleit, an individual, is a citizen of Germany for purposes of §1332(c) and is otherwise *sui juris*. (Compl., ¶5.) Plaintiff BGF, a Panamanian private foundation, is deemed a citizen of Panama for purposes of §1332(c). (Compl., ¶6.) Mickeleit is the president of BGF. (Compl., ¶6.) Defendant VFL, a Florida for profit corporation, is deemed a citizen of Florida for purposes of §1332(c). (Compl., ¶7.) VFL is a Florida law firm. (Compl., ¶7.) Defendant Apostol, an individual, is a citizen of Florida for purposes of §1332(c) and is otherwise *sui juris*. (Compl., ¶8.) Apostol is the registered agent, treasurer, secretary, and a director of VFL. (Compl., ¶8.)

### III.      STATEMENT OF FACTS

#### A.  Mickeleit is Introduced to VFL

9.      In early 2019, Mickeleit was initially introduced to VFL and Elio Medina ("Medina"), an agent or employee of VFL, through a common acquaintance who had previously invested with VFL. (Compl., ¶9.) Mickeleit's first meeting occurred in February 2019 in Panama with Medina and Andrés Jaen ("Jaén"). (Compl., ¶10.) At that time, Jaén was a director for VFL. (Compl., ¶10.) While both Medina and Jaén were present, Jaén led that initial meeting and provided Mickeleit with a presentation regarding the potential investment opportunities with VFL. (Compl., ¶10.)

10.     The presentation included the discussion of primarily two investment opportunities, (1) purchasing medical supplies in the Republic of Panama and then re-selling them to the Panamanian government at a markup; and (2) purchasing concessions to be re-sold at various airports in the Republic of Panama at a markup. Essentially, Defendants sold Plaintiffs on an arbitrage opportunity. (Compl., ¶11.) Jaén explained that he, Apostol, and VFL had been successfully doing these types of investments for years given their close relationship with members of the Panamanian government, and Jaén promised Mickeleit returns of 30%-40% on his invested

funds. (Compl., ¶11.) Jaén also provided Mickeleit with charts showing how the investments would work and the returns he would receive if he were to invest. (Compl., ¶11.)

**B.   The Parties Enter Into a Series of "Escrow Agreements"**

11.     Ultimately, Defendants persuaded Plaintiffs to enter into the following Escrow Agreements[1] with VFL and Apostol:

> Escrow Agreement dated April 23, 2019 ($125,000.00)
> Escrow Agreement dated May 14, 2019 ($135,000.00)
> Escrow Agreement dated May 14, 2019 ($60,000.00)
> Escrow Agreement dated July 10, 2019 ($100,000.00)
> Escrow Agreement dated October 4, 2019 ($328,138.00)
> Escrow Agreement dated December 23, 2019 ($421,500.00)
> Escrow Agreement dated January 23, 2020 ($70,000.00)
> Escrow Agreement dated February 26, 2020 ($677,000.00)
> Escrow Agreement dated March 24, 2020 ($52,340.00)
> Escrow Agreement dated May 19, 2020 ($683,000.00)
> Escrow Agreement dated July 16, 2020 ($1,000,000.00)
> Escrow Agreement dated October 14, 2020 ($956,000.00)
> Escrow Agreement dated November 18, 2020 ($1,200,000.00)
> Escrow Agreement dated March 5, 2021 ($956,000.00)
> Escrow Agreement dated April 9, 2021 ($1,422,000.00)

(Compl., ¶12.) Mickeleit initially invested in his own name, but beginning with the December 23, 2019 Escrow Agreement, at the recommendation of VFL, all of the investments were made through BGF. (Compl., ¶13.) Except for the amounts invested, each of the Escrow Agreements is substantially similar. (Compl., ¶14.) Generally, upon entry into an Escrow Agreement, Plaintiffs would deliver the Escrow Funds to the non-interest bearing Escrow Account (as defined in the Escrow Agreement), to which Apostol had total control and was the sole signatory. (Compl., ¶14.) The Escrow Account was maintained at either Chase Bank, N.A. or Wells Fargo. (Compl., ¶14.) The Escrow Funds would be held in the Escrow Account for a period of no more than 120 days

---

[1] True and correct copies of the Escrow Agreements were attached as **Composite Exhibit A** to the Complaint.

(the "Funding Period"). (Compl., ¶14.) While the Escrow Funds were in the Escrow Account, the Transaction (as defined in the Escrow Agreements) would occur. (Compl., ¶14.) And, finally, at the end of the Funding Period, Defendants were to release to Plaintiffs the Escrow Funds, plus the agreed upon Returns (typically 30% - 40%), within five days of a written request for the return. (Compl., ¶14.)

12.     However, instead of returning the Escrow Funds and Returns to Plaintiffs at the end of the Funding Periods, Defendants would convince Plaintiffs to "rollover" their Escrow Funds and Returns into a new investment and agreement to achieve an even larger return. As a result, Defendants have never paid any monies to Plaintiffs under the Escrow Agreements. (Compl., ¶15.) As additional protection for Plaintiffs, the Escrow Agreements afforded Plaintiffs the right to receive status reports of the underlying transactions every 15 days and written proof of funds letters on a bi-weekly basis demonstrating that the funds are still being maintained in the Escrow Account. (Compl., ¶16.) Defendants failed to comply with these requirements. (Compl., ¶16.) Each time Plaintiffs entered into a new Escrow Agreement, Defendants would assure Plaintiffs that their funds were being held in an escrow account that only Apostol had control over and was the only signatory. (Compl., ¶17.) In actuality, that representation was false, and Defendants knew that representation to be false at the time it was made. (Compl., ¶17.) Defendants have failed to provide Plaintiffs with written evidence demonstrating that the Escrow Funds are maintained in the Escrow Account. (Compl., ¶17.) The simple reason being that Defendants misappropriated such funds and the funds are no longer maintained in the Escrow Account. (Compl., ¶17.)

### C. **Plaintiffs Seek Payment of their Monies from Defendants**

13.     In or around January or February of 2022, Plaintiffs began making demands for the return of the Escrow Funds and Returns. (Compl., ¶18.)  In response, Defendants continually made

excuses as to why the monies were not being delivered. (Compl., ¶18.) Defendants attempted to blame the delays for payment on Chase and Wells Fargo where the Escrow Accounts were maintained, but Defendants never articulated the exact issue or what needed to occur in order for the "issue" to be resolved. (Compl., ¶18.) In reality, Defendants were merely attempting to buy time to try and figure out a way to pay Plaintiffs the monies owed under the Escrow Agreements that Defendants misappropriated. (Compl., ¶18.) Plaintiffs provided Defendants with numerous opportunities to deliver the Escrow Funds and Returns as required pursuant to the Escrow Agreements. (Compl., ¶19.) In fact, although not required to do so, Plaintiffs extended the deadline for Defendants to make good on the payments. (Compl., ¶19.) Despite the repeated extensions and promises by Defendants to deliver the funds, no funds were ever delivered. (Compl., ¶19.)

14.     There is no dispute regarding whether Plaintiffs are owed monies under the Escrow Agreements or as to the amount of Escrow Funds and Returns owed to Plaintiffs under the Escrow Agreements. (Compl., ¶20.) Indeed, on or about July 13, 2022, VFL provided Plaintiffs with an accounting (the "Accounting")[2] acknowledging that Defendants owed Plaintiffs $4,003,860.00 as of that date. (Compl., ¶20.) At the time VFL provided the Accounting, VFL advised that full payment was forthcoming and, as a show of good faith, Defendants would immediately release $150,000.00 to Plaintiffs. (Compl., ¶21.) Again, Defendants failed to make good on their promise, and Defendants never released $150,000.00 or any other funds to Plaintiffs. (Compl., ¶22.)

### D.  **Plaintiffs Send Defendants a Demand Letter**

15.     On July 20, 2022, as a result of Plaintiffs' continued failures to make good on their promises to deliver the Escrow Funds and Returns to Plaintiffs, Plaintiffs' counsel sent Defendants

---

[2] A true and correct copy of the Accounting was attached as **Exhibit B** to the Complaint.

92433609.1

a letter (the "Demand Letter")[3] formally demanding the delivery of the Escrow Funds and the Returns totaling $4,003,860.00 and written confirmation that the funds were still being maintained in the Escrow Account. (Compl., ¶23.) Pursuant to the Escrow Agreements, Defendants had five days to deliver the Escrow Funds and the Returns to Plaintiffs. (Compl., ¶24.) Defendants failed to provide any written response to the Demand Letter or comply with the Demand Letter by delivering the $4,003,860.00. (Compl., ¶25.)

### E.  **Plaintiffs' First Lawsuit Against Defendants**

16.     Because Defendants failed to respond to the Demand Letter, on August 18, 2022, Plaintiffs commenced litigation against Defendants in this Court, Case No. 1:22-cv-22623-BB (the "Litigation"). In the Litigation, Plaintiffs alleged seven causes of action against Defendants:

Count I – Breach of Contract

Count II – Breach of Fiduciary Duty

Count III – Fraudulent Inducement

Count IV – Constructive Fraud

Count V – Conversion

Count VI – Unjust Enrichment

Count VII - FDUPTA

(Compl., ¶26.) Defendants failed to respond to the complaint in the Litigation. However, on October 11, 2022, the parties entered into a settlement agreement (the "Settlement Agreement")[4]. (Compl., ¶27.)

---

[3] A true and correct copy of the Demand Letter was attached as **Exhibit C** to the Complaint.
[4] A true and correct copy of the Settlement Agreement was attached as **Exhibit D** to the Complaint.

92433609.1

17.     As a result of the Settlement Agreement, Plaintiffs voluntarily dismissed the Litigation without prejudice, and the court subsequently entered an order dismissing the litigation without prejudice. (Compl., ¶28.) Pursuant to the Settlement Agreement, Defendants were required to pay to Plaintiffs $3,124,000.00 in six equal installments of $520,668.00 as follows:

October 19, 2022 - $520,668.00
November 30, 2022 - $520,668.00
January 15, 2023 - $520,668.00
February 28, 2023 - $520,668.00
April 14, 2023 - $520,668.00
May 16, 2023 - $520,668.00

(Compl., ¶29.) Defendants defaulted under the Settlement Agreement by, *inter alia*, failing to make the very first payment due under the Settlement Agreement. Defendants had three business days to cure their default under the Settlement Agreement. (Compl., ¶30.) Defendants failed to cure their default under the Settlement Agreement. Indeed, as of the filing of the Complaint, Defendants made no payments to Plaintiffs under the Settlement Agreement. (Compl., ¶31.) Upon the failure of Defendants' to cure their breach under the Settlement Agreement, Defendants agreed to the entry of a stipulated judgment in the amount of $4,003,860.00, less any disbursements made under the Settlement Agreement. (Compl., ¶32.) Plaintiffs sought entry of a stipulated judgment in the Litigation; however, the court denied Plaintiffs' request because it held that it did not retain jurisdiction in the Litigation to enforce the Settlement Agreement or enter the stipulated judgment. (Compl., ¶32.)

18.     Plaintiffs subsequently filed this lawsuit.

## IV.     <u>MEMORANDUM OF LAW</u>

### A.  <u>Legal Standard</u>

19.     It is well-settled that a "district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174

92433609.1

(11th Cir. 1985). Rule 55 of the Federal Rules of Civil Procedure provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a). Although modern courts do not favor default judgments, they are appropriate when the adversary process has been halted because of an unresponsive party. *Jones v. Lewis*, No. 17-81046-CIV, 2018 U.S. Dist. LEXIS 99218, at *6 (S.D. Fla. June 12, 2018) (quoting *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp. 2d 193, 195 (D.D.C. 2006). Where, as here, Defendants have failed to respond to or otherwise acknowledge the pendency of a lawsuit against it/him after being served, entry of default judgment is appropriate.

20.     On a motion for default judgment under Fed. R. Civ. P. 55(b)(2), the Court accepts as true the facts alleged in the complaint: "[b]y defaulting, the [defendant is] deemed to have 'admit[ted] the plaintiff's well-pleaded allegations of fact' for purposes of liability." *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). If the admitted facts establish the defaulting defendant's liability, the plaintiff is entitled to relief against that defendant. *Shandong Airlines Co. v. CAPT, LLC,* 650 F. Supp. 2d 1202, 1206 (M.D. Fla. 2009) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). "The entry of a default judgment is committed to the discretion of the district court[.]" *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Here, the facts alleged in Plaintiffs' Complaint establish Defendants' liability as to Counts I-VIII.

21.     Additionally, "[a]lthough a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citation omitted). Damages may be awarded without an evidentiary hearing if the record adequately reflects the basis for award via

"'a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quoting *United Artists Corp. v. Freema*n, 605 F.2d 854, 857 (5th Cir. 1979)); *see also SEC v. Smyth*, 420 F.3d 1225, 1231–32 (11th Cir. 2005). In other words, a court may award damages "as long as the record contains evidence allowing the court to ascertain damages from 'mathematical calculations' and 'detailed affidavits.'" *Holtz v. Bagel Mkt., Inc*., No. 12-62040-CIV, 2013 WL 12141515, at *2 (S.D. Fla. Apr. 29, 2013) (quoting *Adolph Coors*, 777 F.2d at 1543–44).

   **B.  Liability**

   **i.      Count I – Breach of Contract (as to VFL and Apostol)**[5]

   22.    Plaintiffs have provided factual support pertaining to all elements for their breach of contract claim. Under Florida law, the elements of a breach of contract claim are "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). *See also* Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 1st DCA 2006). As detailed herein, the allegations in the Complaint are sufficient to plead the requirements for a breach of contract. To wit, Plaintiffs and Defendants entered into the Escrow Agreements, Defendants failed to disburse the amounts due and owing pursuant to the Escrow Agreements, and Plaintiffs suffered damages as a result.

   23.    Accordingly, Plaintiffs are entitled to default judgment on their breach of contract claim.

---

[5] *See* Compl., ¶¶36-42

92433609.1

### ii.     Count II – Breach of Fiduciary Duty (as to VFL and Apostol)[6]

24.     Plaintiffs have provided factual support pertaining to all elements of their breach of fiduciary duty claim. Under Florida law, "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Taubenfeld v. Lasko*, 324 So. 3d 529, 537 (Fla. 4th DCA 2021) citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). An escrow agent owes a fiduciary duty to the parties to the escrow transaction. *See Watkins v. NCNB Nat'l Bank, N.A.*, 622 So. 2d 1063, 1064 (Fla. 3d DCA 1993); *see also United Am. Bank v. Seligman*, 599 So. 2d 1014, 1016 (Fla. 5th DCA 1992) ("The relationship is that of principal and agent and involves the escrow agent being an agent of, and owing a fiduciary duty to, all of the principal parties.") Here, Defendants were undoubtedly escrow agents who owed a fiduciary duty to Plaintiffs under the Escrow Agreement. Indeed, the Escrow Agreements specifically state that "a fiduciary relationship shall exist between the Escrow Agent and the Investor and Escrow Agent acknowledges its fiduciary obligations to the Investor." *See* Escrow Agreements, ¶6b. Defendants owed duties to Plaintiffs of loyalty, prudent administration and control of the escrowed property, refraining from gross negligence or reckless conduct, self-dealing, and willful or intentional misconduct. Defendants were further required to discharge their duties consistently with the obligations of good faith and fair dealing. Defendants breached that duty by failing to disburse the funds pursuant to the terms of the Escrow Agreements and comply with the other terms of the Escrow Agreements and otherwise dissipating or misappropriating the funds. *See Seligman*, 599 So. 2d 1017 (noting that an escrow agent breaches its fiduciary duty when it does not disburse

---

[6] *See* Compl., ¶¶43-54

92433609.1

funds in accordance with the agreement). Plaintiffs have been damaged as a direct and proximate result of Defendants' breaches of fiduciary duty.

25.     Accordingly, Plaintiffs are entitled to default judgment on their breach of fiduciary duty claim.

### iii.     Count III – Fraudulent Inducement (as to VFL and Apostol)[7]

26.     Plaintiffs have provided factual support pertaining to all elements of their fraudulent inducement claim. The elements of fraudulent inducement are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation. *See Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. 3d DCA 2016). As alleged in the Complaint, Defendants made false representations to Plaintiffs to induce Plaintiffs to invest and enter into the Escrow Agreements. Defendants promised Plaintiffs returns of 30% - 40%, when Defendants knew that they were incapable of providing such returns to Plaintiffs. Moreover, each time Plaintiffs entered into a new Escrow Agreement, Defendants promised that the Escrow Funds would be held pursuant to the terms of the Escrow Agreements. However, at the time Defendants executed the Escrow Agreements, Defendants had no intention of complying with such terms.

27.     In making the knowingly false representations, Defendants intended to, and did, induce Plaintiffs to enter into each Escrow Agreement. Plaintiffs acted in reliance on Defendants' false representations and invested in the Escrow Agreements under the belief that said funds would be utilized consistent with the terms of the Escrow Agreements and that Defendants would take such other actions as they represented that they would and had done, including maintaining the

---

[7] *See* Compl., ¶¶55-64

Escrow Funds in the Escrow Account and delivering the Escrow Funds and Returns upon expiration of the Funding Period. Had Plaintiffs known that Defendants never intended to comply with the terms of the Escrow Agreements, were incapable of complying with the terms of the Escrow Agreements at the time they were executed, or intended to misappropriate such funds, Plaintiffs would have never entered into the Escrow Agreements. As a result of Plaintiffs' reliance on Defendants' false representations, Plaintiffs suffered significant damages.

28.     Accordingly, Plaintiffs are entitled to default judgment on their fraudulent inducement claim.

### iv.     Count IV – Constructive Fraud (as to VFL and Apostol)[8]

29.     Plaintiffs have provided factual support pertaining to all elements of their constructive fraud claim. As noted in *First Union National Bank of Florida v. Whitener*, 715 So. 2d 979, 928 (Fla. 5th DCA 1998):

> Constructive fraud is the term typically applied where a duty under a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken. Constructive fraud may be based on misrepresentation or concealment, or the fraud may consist of taking an improper advantage of a fiduciary relationship at the expense of the confiding party.

30.     As noted above, under the Escrow Agreements, VFL and Apostol owed fiduciary duties to Plaintiffs. Plaintiffs placed trust and confidence in VFL and Apostol and trusted that they would comply with the terms of the Escrow Agreements, including properly accounting for the Escrow Funds, holding the Escrow Funds pursuant to the terms of the Escrow Agreements, providing Plaintiffs with all required reports and status updates under the Escrow Agreements, and delivering the Escrow Funds and Returns as required. Plaintiffs, VFL, and Apostol were not dealing at arm's length. Indeed, VFL and Apostol knowingly misrepresented (and continue to

---

[8] *See* Compl., ¶¶65-70

92433609.1

misrepresent) the status of Plaintiffs' Escrow Funds and how such funds would be utilized. As a result of Defendants' constructive fraud, Plaintiffs have suffered significant damages.

31.     Accordingly, Plaintiffs are entitled to default judgment on their constructive fraud claim.

### v.     Count V – Conversion (as to VFL and Apostol)[9]

32.     Plaintiffs have provided factual support pertaining to all elements of their conversion claim. Under Florida law, to state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property. *See Taubenfeld v. Lasko*, 324 So. 3d 529, 542 (Fla. 4th DCA 2021) (citations and quotations omitted). "The essence of an action for conversion is 'not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled.'" *Id.* citing *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858, 860 (Fla. 1948). Money can be the subject of conversion so long as it consists of specific money capable of identification and there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified. *Taubenfeld*, 324 So. 3d at 542.

33.     Here, Defendants' improper taking and retention of the Escrow Funds which belong to Plaintiffs gives rise to a claim for conversion. Defendants, without authorization, asserted dominion and control over the Escrow Funds. The Escrow Funds are specifically identifiable property of Plaintiffs and are or were the property of Plaintiffs and which were owned or payable to Plaintiffs pursuant to the terms of the Escrow Agreements. Defendants' conversion is inconsistent with Plaintiffs' rights and ownership of the Escrow Funds. Plaintiffs made a demand

---

[9] *See* Compl., ¶¶71-80

92433609.1

for the return of the Escrow Funds, but the funds have not been returned. As a result of Defendants' conversion of the Escrow Funds, Plaintiffs have been damaged.

34.     Accordingly, Plaintiffs are entitled to default judgment on their conversion claim.

### vi.     Count VI – Unjust Enrichment (as to VFL and Apostol)[10]

35.     As a general principle, a plaintiff cannot pursue an implied contract theory, such as unjust enrichment or *quantum meruit*, if an express contract exists. *See Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. 4th DCA 2016) (stating that a plaintiff cannot pursue unjust enrichment or *quantum merit* "if an express contract exists"). However, pursuant to Fed. R. Civ. P. 8, Plaintiffs may plead alternative grounds for relief, which it has done here. Fed. R. Civ. P. 8(a)(3). To successfully prevail on a claim for unjust enrichment a plaintiff must prove that: (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

36.     Here, Plaintiffs state in the Complaint that by delivering the Escrow Funds to Defendants, Plaintiffs conferred a benefit on Defendants, each of whom has knowledge of the benefit conferred. Defendants voluntarily accepted and retained the benefits conferred by Plaintiffs. Because Plaintiffs provided substantial benefits to Defendants and Defendants provided no corresponding benefit to Plaintiffs because, *inter alia*, Defendants did not return the Escrow Funds or the Returns and retained such funds for their own benefit, the circumstances render the Defendants' retention of the benefits conferred inequitable unless Defendants return the monies to Plaintiffs. Therefore, even if the Court finds that Plaintiffs have not successfully stated a claim of

---

[10] *See* Compl., ¶¶81-85

breach of contract, Plaintiffs still successfully stated a substantive cause of action through their claim for unjust enrichment.

37.     As such, there is sufficient basis in the pleadings for the relief sought, and Plaintiffs are entitled to default judgment on their unjust enrichment claim.[11]

### vii.     Count VII – FDUPTA (as to VFL and Apostol)[12]

38.     In order to properly state a claim pursuant to FDUPTA, a plaintiff must allege a deceptive act or unfair practice, causation, and actual damages. *See Ferrara v. LCS Fin. Servs. Corp.*, 2015 U.S. Dist. LEXIS 1448, *6 (M.D. Fla. Jan. 15, 2015). Plaintiffs have satisfied each of these elements. Plaintiffs are consumers within the meaning of Fla. Stat. §501.203(7). VFL and Apostol engaged in trade or commerce within the meaning of Fla. Stat. §501.203(8) by, *inter alia*, entering into the Escrow Agreements and participating in other business dealings with Plaintiffs. Defendants' conduct in making misrepresentations to Plaintiffs in order to get them to enter into the Escrow Agreements was unfair, deceptive, unconscionable, immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs.

39.     By serving as the authorized representative of VFL, signatory to the Escrow Agreements, and sole signatory and control person over the Escrow Account, Apostol was integral to facilitating these unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce. As a result of Defendants' unfair and deceptive practices, Plaintiffs, acting reasonably in the circumstances, were misled into

---

[11] Plaintiffs acknowledge that they are not entitled to default judgment on the unjust enrichment claim if default judgment is entered on Plaintiffs' other claims, *i.e.*, breach of contract. *See Shandong Airlines Co. Ltd. v. CAPT, LLC*, 650 F. Supp. 2d 1202, 1207 (M.D. Fla. 2009) (dismissing as moot quasi-contract claims after finding the plaintiff was entitled to default judgment on breach of contract claim).

[12] *See* Compl., ¶¶86-94

92433609.1

executing the Escrow Agreements and delivering the Escrow Funds to Defendants. Defendants'
conduct was likely to deceive a consumer acting reasonably in the circumstances in which
Plaintiffs were placed to their detriment. Indeed, Plaintiffs are aware of other investors who were
similarly deceived by Defendants under similar circumstances. As a result of Defendants'
violations of FDUPTA, Plaintiffs have been damaged.

40.     Accordingly, Plaintiffs are entitled to default judgment on their FDUPTA claim.

**viii.     Count VIII – Breach of Settlement Agreement (as to VFL and Apostol)[13]**

41.     Plaintiffs have provided factual support pertaining to all elements for their breach
of settlement agreement claim. The elements of a breach of contract claim are noted above. Here,
Plaintiffs and VFL and Apostol are parties to a written contract, the Settlement Agreement.
Plaintiffs have performed all obligations under the Settlement Agreement. Pursuant to the
Settlement Agreement, Defendants were required to pay to Plaintiffs $3,124,000.00 in six equal
installments of $520,668.00 as follows:

- October 19, 2022 - $520,668.00
- November 30, 2022 - $520,668.00
- January 15, 2023 - $520,668.00
- February 28, 2023 - $520,668.00
- April 14, 2023 - $520,668.00
- May 16, 2023 - $520,668.00

42.     Defendants breached the Settlement Agreement by, *inter alia*, failing to make the
very first payment due under the Settlement Agreement. As of the filing of this Motion, Defendants
have made no payments to Plaintiffs under the Settlement Agreement. Plaintiffs have suffered, and
continue to suffer, damages as a result of VFL's and Apostol's breaches of the Settlement
Agreement.

---

[13] *See* Compl., ¶¶95-101

43.     Accordingly, Plaintiffs are entitled to default judgment on their breach of settlement agreement claim.

**C.  Damages**

44.     In addition to entering default judgment on liability, a court must determine the amount of damages to be awarded. *See Holtz*, 2013 WL 12141515, at *2. The burden is on the plaintiff to prove the amount of damages owed. *Varela v. Innovating Wiring Sols., LLC*, No. 6:07-cv-165-Orl-28KRS, 2009 WL 1795044, at *4 (M.D. Fla. June 22, 2009). "Affidavits based on personal knowledge can be sufficient evidence to establish damages." *Holtz*, 2013 WL 1214515, at *2.

45.     Here, in the Complaint, Plaintiffs sought a sum certain as to damages from Defendants. Defendants owe Plaintiffs $4,003,860.00. *See* Declaration of Damages, attached hereto as **Exhibit A** (the "Mickeleit Declaration").  As set forth in the Mickeleit Declaration, this amount has been acknowledged by Defendants as the amount due and owing to Plaintiffs both in the Accounting and the Settlement Agreement. Therefore, Plaintiff is entitled to damages in the amount of $4,003,860.00. Moreover, pursuant to the Escrow Agreements, Plaintiffs are also entitled to recover their attorneys' fees and costs if they are the prevailing party in any dispute, difference, controversy, or claim arising out of or relating to the Escrow Agreements. *See* Escrow Agreements, ¶17.

**WHEREFORE**, given these well-pled allegations, the declaration attached hereto, and the failure of Defendants to timely answer or defend the instant lawsuit, Plaintiffs respectfully request that this Honorable Court enter final judgment in the amount of $4,003,860.00 against Defendants, jointly and severally, awarding Plaintiffs their reasonable attorneys' fees and costs in an amount to be determined by the Court in accordance with the Local Rules of the Southern District of

Florida, including Local Rule 7.3(a), and grant such other and further relief as the Court deems just and appropriate.[14]

Dated: March 30, 2023                         Respectfully submitted,

                                         **LEWIS BRISBOIS BISGAARD & SMITH LLP**
                                         *Attorneys for Plaintiffs*
                                         110 SE 6th Street, Suite 2600
                                         Fort Lauderdale, Florida 33301
                                         Tel.: 954-728-1280
                                         Fax: 954-678-4090
                                         Vincent.Alexander@lewisbrisbois.com

                                         By: /s/ Vincent F. Alexander
                                             Vincent F. Alexander
                                             Fla. Bar No. 68114

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that on March 30, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day by (1) transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record or pro se parties who are authorized to receive electronically Notice of Electronic Filing in this case; and (2) U.S. First Class Mail on the parties on the attached Service List.

                                          By: /s/ Vincent F. Alexander
                                             Vincent F. Alexander

---

[14] A proposed Final Default Judgment is attached hereto as **Exhibit B**.

92433609.1

## SERVICE LIST

| | |
|---|---|
| VALLARINO FRY LAW P.A. d/b/a BUFETE VALLARINO y ASOCIADOS c/o Nicholas M. Apostol, Registered Agent 5755 SW Ranchito Street Palm City, FL 34990 | Nicholas M. Apostol 5755 SW Ranchito Street Palm City, FL 34990 |
| VALLARINO FRY LAW P.A. d/b/a BUFETE VALLARINO y ASOCIADOS 789 SW Federal Highway, Suite 200 Stuart, FL 34994 | VALLARINO FRY LAW P.A. d/b/a BUFETE VALLARINO y ASOCIADOS P.O. Box 1997 Palm City, FL 34991-1997 |

92433609.1